CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

April 13, 2026
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **LARRY K. PEYTON, ADMINISTRATOR OF THE ESTATE OF RITA C. PEYTON, DECEASED**, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25CV00015 |
| v. | ) ) | **OPINION AND ORDER** |
| **BLUE RIDGE RADIOLOGY, P.C.,** | ) ) | JUDGE JAMES P. JONES |
| Defendant. | ) ) ) | |

*Andrew M. Bowman, Charles H. Smith, III, and Charlie D. Morrison,* GENTRY LOCKE, *Roanoke, Virginia, for Plaintiff; Carlyle R. Wimbish, III, and Bradley D. Reeser,* WIMBISH GENTILE MCCRAY & ROEBER, PLLC, *Richmond, Virginia, for Defendant.*

The plaintiff in this medical malpractice action is the executor of his wife, who expired following an aborted lung biopsy performed by a physician employed by the defendant. The plaintiff claims that the physician violated the standard of care in the performance of the procedure and the handling of complications which lead to his wife's death. In advance of trial, both parties have submitted motions in limine to exclude certain expert witnesses or limit the scope of their testimony.

## I. BACKGROUND.

On September 19, 2023, Rita C. Peyton (Mrs. Peyton) was seen at a local hospital by a physician employed by Blue Ridge Radiology, P.C. (Blue Ridge) for an outpatient CT-guided biopsy of a lesion on her lung. The biopsy required that the doctor insert a biopsy needle into Mrs. Peyton's lung to reach the lesion. But after nine unsuccessful attempts to reach the lesion, Mrs. Peyton was hemorrhaging so severely that she began coughing up blood. The physician then instructed her to sit upright, an event that is subject to dispute in the case. After her oxygen saturation dropped, she was transferred to the Emergency Department and subsequently went into cardiac arrest. Ultimately, her condition deteriorated, and she suffered a stroke. On September 21, 2023, Mrs. Peyton died. The plaintiff, Larry K. Peyton (Mr. Peyton), her executor, asserts that she died as a direct and proximate result of the physician's negligence. Blue Ridge responds that the physician did not violate the standard of care applicable to the procedure and that she would have survived had she been treated properly in the Emergency Department.

There are three motions at issue in this opinion. Blue Ridge has filed motions to exclude or limit the testimony of two of the plaintiff's expert witnesses, Dr. Bream and Dr. Fulton. Mr. Peyton has filed motions to exclude or limit the testimony of one of Blue Ridge's expert witnesses, Dr. Mistretta. For the reasons that follow, I will deny all of the motions.

## II.  STANDARD OF REVIEW.

*Daubert v. Merrel Dow Pharmaceuticals, Inc.* provides the basic analytical framework for determining the admissibility of expert testimony.  509 U.S. 579, 589 (1993).  Under *Daubert*, the court acts as a gatekeeper by ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id.* at 589.  "[T]he trial judge's general 'gatekeeping' obligation [] applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citation omitted).  The trial court's inquiry into admissibility is "a flexible one" and the court's analysis will "depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Id.* at 150 (internal quotation marks and citation omitted).  More generally, cases after *Daubert* have shown that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 (advisory committee's note to 2000 amendment).

The principles of *Daubert* and its progeny are reflected in the Federal Rules of Evidence, which allow expert evidence under certain circumstances:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . .
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As stated by the advisory committee:

When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 (advisory committee's note to 2000 amendment). The reality is that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

### III.   MOTIONS TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERTS.

#### A. Testimony by Dr. Bream.

Blue Ridge moves to exclude the testimony of the  proposed expert witness, Peter R. Bream, Jr., M.D., regarding the reasonableness or necessity of emergency

-4-

care for Mrs. Peyton.  Dr. Bream is an interventional radiologist whose testimony is offered to support the claim that Mrs. Peyton died as a result of the physician's violations of the standard of care applicable to the biopsy procedure.

Blue Ridge takes issue with a statement in Dr. Bream's report that the emergency care Mrs. Peyton received after the biopsy was reasonable and appropriate.  Blue Ridge argues that because Dr. Bream is not an expert in emergency or critical care, he is not qualified to provide an opinion regarding the reasonableness or necessity of the emergency care that was provided to Mrs. Peyton.

The plaintiff responds that Dr. Bream is not providing an opinion on the standard of care relevant to emergency and critical care.  Rather, he argues that Dr. Bream was stating his opinion that it was medically necessary to transfer Mrs. Peyton to the Emergency Department for additional treatment given her condition.

Given the plaintiff's stated intention to offer Dr. Bream's opinion on emergency care to show that a radiologist would transfer someone in Mrs. Peyton's condition to the Emergency Department, I find that Dr. Bream is not testifying outside his specialty.

## B.  Testimony by Dr. Fulton.

Blue Ridge also moves to exclude the standard of care opinions of Matthew B. Fulton, D.O.  Dr. Fulton is an anesthesiologist and expresses in his report that the performing physician did not undertake appropriate airway management when he

instructed Mrs. Peyton to sit up after she began coughing up blood. Blue Ridge argues that because Dr. Fulton is not a radiologist and does not perform CT-guided lung biopsies, he should not be permitted to render a standard of care opinion regarding the approach to airway management.

Mr. Peyton responds that Dr. Fulton is offering his standard of care opinions solely with regard to the physician's post-biopsy treatment of the complications. Mr. Peyton argues that this treatment is separate from the biopsy procedure itself and is common to both interventional radiologists and anesthesiologists.

Virginia law governs the admission of expert testimony on the standard of care in this case. *Hottle ex rel. Estate of Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir.1995). Under Virginia law, a witness is qualified as an expert in the applicable standard of care if:

> [H]e demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Va. Code Ann. § 8.01-581.20(A). The focus of the inquiry is "the expert's knowledge of, and experience with, the specific procedure at issue, not on the expert's professional qualifications relative to those of the defendant practitioner." *Creekmore v. Maryview Hosp.*, 662 F.3d 686, 691 (4th Cir. 2011).

Because I find from the evidence presented that the management of the post-biopsy complications are sufficiently distinct from the biopsy procedure itself, I will deny Blue Ridge's motion to exclude Dr. Fulton's standard of care opinions. There is no indication that the standard of care applicable to pneumothorax, hemorrhage, or hemoptysis is different if those complications emerged after a procedure performed by an interventional radiologist, rather than a physician of another specialty. As an anesthesiologist, Dr. Fulton has knowledge of and experience with the relevant complications that emerge in surgical contexts. He is not disqualified because he does not perform CT-guided lung biopsies.

## IV.  MOTION TO EXCLUDE CAUSATION OPINIONS OF DR. MISTRETTA.

Mr. Peyton moves to exclude the causation opinions of Michael Mistretta, M.D., who opines that Mrs. Peyton's death was caused by the emergency treatment she received, not the procedure performed. Mr. Peyton argues that these opinions are inadmissible because Mrs. Peyton would not have suffered the complications if not for the alleged malpractice. Mr. Peyton therefore claims that Mrs. Peyton's death is an aggravation of the initial injuries the physician caused, making the alleged negligence of the Emergency Department irrelevant.

Mr. Peyton is correct that, in Virginia, "[t]he general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law

regards the aggravation of the injury resulting from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury." *Smith ex rel. Estate of Smith v. Byungki Kim*, 675 S.E.2d 193, 196 (Va. 2009) (citations omitted). However, "if subsequent negligent acts could not be reasonably anticipated, there are two separate and distinct torts, not a mere aggravation of the original injury." *Id.* at 197. In general, "[w]hether the physician's negligent acts cause a mere aggravation of the original injury or cause instead a separate and distinct injury should . . . be left to the determination of a jury, guided by ordinary principles of proximate cause." *Id.* (citation omitted).

Here, whether Mrs. Peyton's death was an aggravation of injuries inflicted during her biopsy or a separate and distinct injury is a question best left to the jury, after proper instructions by the court. Whether the allegedly negligent acts of the Emergency Department were foreseeable is not a question of law for me to determine. Further, I do not find that evidence regarding Mrs. Peyton's emergency treatment would unfairly prejudice or confuse the jury. Rather, the jury is best positioned to consider the credibility of experts and evidence in their determinations of causation.

V. CONCLUSION.

It is accordingly **ORDERED** as follows:

1. The Motion to Exclude Certain Opinions of Dr. Bream, ECF No. 16, is DENIED;

2. The Motion to Exclude Standard of Care Opinions of Dr. Fulton, ECF No. 17, is DENIED; and

3. The Motion *In Limine* to Exclude the Causation Opinions of Michael Mistretta, M.D., ECF No. 19, is DENIED.

ENTER:  April 13, 2026

/s/  JAMES P. JONES
Senior United States District Judge